UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
———

DIRK A. SMITH,                        )
                                      )
                    Plaintiff,        )        Case No. 1:06-cv-233
                                      )
v.                                    )        Honorable Joseph G. Scoville
                                      )
COMMISSIONER OF                       )
SOCIAL SECURITY,                      )
                                      )        **MEMORANDUM OPINION**
                    Defendant.        )
_____)

This is a social security action brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

On July 11, 2003, plaintiff filed the applications for disability insurance benefits (DIB) and

supplemental security income (SSI) benefits giving rise to this appeal.  (A.R. 48-50, 130-33).

Plaintiff claimed a February 14, 2003 onset of disability.  Plaintiff's claims were denied on initial

review. (A.R. 20-26, 136-41).  On May 5, 2005, plaintiff received a hearing before an administrative

law judge (ALJ), at which he was represented by counsel.  (A.R. 269-317).  On October 27, 2005,

the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 13-19).  The Appeals

Council denied review on February 8, 2006 (A.R. 3-5), and the ALJ's decision became the

Commissioner's final decision.  On April 6, 2006, plaintiff filed his complaint seeking judicial

review of the Commissioner's decision denying his claims for DIB and SSI benefits.  Pursuant to

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily

consented to have a United States magistrate judge conduct all further proceedings in this case,

including entry of final judgment.  (docket # 9).

Plaintiff's statement of errors is set forth below:

I.    THE ALJ COUNTED THE WASTEWATER OPERATOR JOB AS "PAST RELEVANT WORK"

    A.    WITHOUT CONSIDERING WHETHER IT WAS A "SPECIAL CONDITIONS" JOB, WHICH DOES NOT EVIDENCE "SUBSTANTIAL GAINFUL ACTIVITY"; AND

    B.    DESPITE UNCONTRADICTED EVIDENCE THAT THE JOB AS IT HAD TO BE PERFORMED BY PLAINTIFF NO LONGER EXISTS IN THE ECONOMY[.]

II.    THE ALJ COUNTED BENCH ASSEMBLY AS "PAST RELEVANT WORK," EVEN THOUGH

    A.    PLAINTIFF PERFORMED THAT WORK ONLY AS PART OF A LARGER JOB; AND

    B.    THE TREATORS' OPINIONS THAT THE WORK EXCEEDED PLAINTIFF'S RESTRICTIONS WERE OPPOSED BY ONLY INSUBSTANTIAL EVIDENCE (THE CLAIM OF A MERE RECORDS REVIEWER).

(Statement of Errors, Plaintiff's Brief at 2, docket # 10). Upon review, the court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402

U.S. 389, 401 (1971)).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528;  *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on February 14, 2003, his alleged onset of disability, and continued to meet those

requirements through October 27, 2005, the date of the ALJ's decision.  Plaintiff had not engaged

in substantial gainful activity since his alleged onset of disability.  The ALJ found that plaintiff had

severe impairments consisting of "status-post [October 1997] T5 arterial fistulectomy with residual

numbness and a panic disorder without agoraphobia."  (A.R. 18).  The ALJ found that plaintiff did

not have an impairment or combination of impairments which met or equaled the requirements of

the listing of impairments.  The ALJ found that the 45-year-old plaintiff's subjective complaints

were not fully credible:

> The claimant testified that he is disabled because of the residuals of an arterial fistulectomy of the T5 level of the spinal cord.  He stated that he has had significant residual numbness, leg spasms, and fatigue and that he needs to alternate sitting and standing.  He also testified that although his depression is improving with medication, he suffers from panic attacks twice a week.
>
> The medical evidence reveals that the claimant underwent a T5 arterial fistulectomy in 1997. John E. Schloff, M.D., the claimant's treating physician, has stated that the claimant has residual numbness from the waist down with the left greater than the right (Exhibit 6F, pages 4 and 6 [A.R. 208, 210]).
>
> A specialist in adult neurology reported in July 2003 that the claimant had some weakness in his upper extremity.  He had, however, nearly normal to normal strength in both upper extremities.  While his right finger flexor reflex was present, it was absent on the left.  Even though he had a positive Tinel's sign over the median nerve across the left wrist, his electromyogram (EMG) did not show any evidence of ulnar neuropathy.  The neurologist concluded that the claimant had carpal tunnel syndrome, evidence of a remote left C8 radiculopathy, and no evidence of any ongoing denervation.  Although the claimant reported that he had improvement with cramping as a result of a Botox injection, he chose not to continue with the injections (Exhibit 8F [A.R. 231-34]).
>
> Although the claimant has been noted to walk stiffly, he has no observable postural or gait problems.  He was able to drive 20 to 25 miles from his home to a consulting psychologist's office (Exhibit 10F [A.R. 245]).
>
> The consulting psychologist has documented the claimant's statements that he enjoys hunting and fishing and that he spends his time caring for his children and doing a bit of woodworking.  The claimant reported that he is depressed because he cannot do what he used to do.  He also expressed having panic attacks, which occur once a week or every other week,

-4-

since 1997.  During mental status evaluation the claimant was determined fully oriented to time, person, and place.  He displayed no impairment in memory, calculation, abstract thinking, or judgment.  The psychologist offered the opinion that the claimant had a depressive disorder (not otherwise specified), which was improving with medication, and a panic disorder without agoraphobia.  The psychologist determined that the claimant's Global Assessment of Functioning (GAF) was 55 (Exhibit 10F [A.R. 247]).  The *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)* defines a code of 55 as representing moderate symptoms or moderate difficulty in social, occupational, or school functioning.

The claimant has alleged that he cannot lift more than five to ten pounds, walk more than one-half mile, stand more than 20 to 30 minutes, and sit more than 30 minutes.  He related that he is able to work with others.  He further testified that during a typical day he does home exercises.  Because his wife works, he is a "house husband" and stays at home to care for his two young children.  He further stated that he drives at times and enjoys gun and bow hunting and fishing.  He reported that he uses an all-terrain vehicle to go deer hunting.  The claimant has also reported that he cooks, cleans the house, does yard work, shops, reads, fixes small things around the house, plays card games, regularly visits with friends and relatives, handles some finances, goes out to eat or to the movies three times a week, and watches television two to four hours daily (Exhibit 10E [A.R. 117-29]).[1]

Based upon the claimant's treatment history, the objective medical findings of record, the comments of medical sources of record, the claimant's medication usage, and his daily activities which reflect the ability to perform light work activities, the undersigned finds that the claimant's allegations regarding his physical limitations are not totally credible.  His allegations are credible only to the extent that they comport with the residual functional capacity finding of this decision.

(A.R. 15-16).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

He has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk at least two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  He can only occasionally climb ramps and stairs, stoop, crouch, and crawl, and he is unable to climb ladders, ropes, and scaffolds.  He is also moderately limited in understanding, remembering, and carrying out detailed instructions and in completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods.

---

[1] Plaintiff testified that he has a high school education.  (A.R. 273).

(A.R. 19).  The ALJ determined that plaintiff's past relevant work as a wastewater treatment operator and bench assembler did not require the performance of work-related activities precluded by plaintiff's residual functional capacity.  Thus, the ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis.  (A.R. 13-19).

## 1.

Plaintiff argues that the ALJ erred by "counting" plaintiff's wastewater treatment plant operator job as past relevant work (1) "without considering whether it was a 'special conditions' job, which does not evidence 'substantial gainful activity'"; and (2) because the evidence established that the job "as it had to be performed by plaintiff no longer exists in the economy." (Statement of Errors, ¶¶ I(A) and (B), Plaintiff's Brief at 2).  Neither argument has merit.

A.      <u>Implicit Challenges to the ALJ's Credibility and RFC Determinations</u>

As a preliminary matter, the court will address two underlying assumptions running throughout plaintiff's brief:  (1) that  plaintiff's subjective complaints were fully credible; and (2) that plaintiff had greater functional limitations than the ALJ found.  Upon review, the court finds that the ALJ's credibility and RFC determinations are supported by substantial evidence.

This court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006).  The court cannot substitute its own credibility determination for the ALJ's.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective

complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see West v. Commissioner*, No. 06-5763, 2007 WL 1991059, at * 4 (6th Cir. July 15, 2007). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). The ALJ's credibility determination, previously quoted at length herein, is supported by more than substantial evidence, particularly in light of plaintiff's expansive daily activities which included hunting, woodworking, providing care for young children, and yard work. *See Cruse v. Commissioner*, No. 06-5772, __ F.3d __, slip op. at 9 (6th Cir. Sept. 24, 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

　　　　RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 530; *Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category

-7-

if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b); *Longworth v. Commissioner*, 402 F.3d 591, 596 (6th Cir. 2005).  In determining RFC, the ALJ gave considerable weight to the opinions of plaintiff's treating physician, John E. Schloff, M.D., and found that the opinions of a State Agency physician were generally consistent with Dr. Schloff's opinions:

> Dr. Schloff has reported that the claimant presents subjective symptoms regarding weakness.  While in February 2003, the doctor suggested that the claimant needed a job that entailed frequent alternating of standing and sitting (Exhibit 6F [A.R. 211]), in July 2003 the doctor assessed that during a normal working day the claimant could stand or walk up to four hours [and] sit three to five hours [A.R. 227].  The doctor advised that the claimant should not do squatting, climbing, and crawling.  He also offered the opinion that the claimant would be able to lift a maximum of 30 pounds and that he would be able to do simple grasping, firm grasping, and fine manipulating [A.R. 227].  The treating physician opined that plaintiff had no mental limitations and was able to function under stress and engage in interpersonal relations [A.R. 228].  The doctor concluded that the claimant could do both part-time and full-time work.  (Exhibit 7F [A.R. 228]).

> The undersigned has considered the comments made by the State Agency physician who has assessed that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, stands or walk (with normal breaks) at least two hours in an eight-hour workday.  The physician determined that while the claimant had no limitation in pushing or pulling, he could only occasionally climb ramps and stairs and could never climb ladders, ropes, and scaffolds.  The claimant was further limited to occasional stooping, crouching, and crawling (Exhibit 9F [A.R. 235-43]).  The undersigned observes that although in July 2003 that the claimant would be capable of sedentary activity, he also indicated that the claimant could lift up to 30 pounds and stand or walk up to four hours (Exhibit 7F).  The undersigned concludes that the State Agency opinion is not inconsistent with Dr. Schloff's July 2003 opinion.

(A.R. 16-17).

A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Pascoe v. Commissioner*, 137 F. App'x 828, 837 (6th Cir. 2005); *see also Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006) ("Although the opinion of a treating physician is generally accorded great weight, such deference applies only where the physician's opinion is based on sufficient medical data."); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005) ("[R]egardless of whether Dr. McFadden was a treating physician, his opinion was entitled to controlling weight only if it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record.").  An opinion that is based on the claimant's reporting of his or her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007).  The ALJ gave considerable weight in his RFC determination to the opinions of plaintiff's treating physician, Dr. Schloff.  (A.R. 226-27).

Plaintiff argues that the ALJ failed to give sufficient deference to "treator [sic] Thoits. who stated, 'Dirk . . . must be allowed to sit, stand and walk during the work day' (204)."  (Plf. Brief at 14).  Dr. Thoits does not appear to have been a treating physician during the relevant time period from February 14, 2003, through October 27, 2005.  Plaintiff did not submit any medical records from Dr. Thoits reflecting ongoing treatment.  Plaintiff's brief emphasizes Thoits's October 10, 2002 letter addressed to "Whom It May Concern," containing Thoits's opinion that inactivity was the "worst thing" for plaintiff, stating that plaintiff "must be allowed to sit, stand and walk during the work day," and recommending that plaintiff continue to take medications to control leg spasticity

and undertake a month of "intense physical therapy." (A.R. 204). The administrative record includes Dr. Thoits's transmittal letters to Dr. Schloff dated October 10 and December 11, 2002. (A.R. 196-203). On October 10, 2002, Dr. Thoits recorded that plaintiff had returned after a "15 month" absence. (A.R. 202). On examination, plaintiff was in no distress. His mental status was normal. Plaintiff had normal strength in his upper extremities. "In the lower extremities the psoas was 4/3, H 4/3, Q 5/5, TA 4/4." (*Id.*). Dr. Thoits recommended that plaintiff undergo a vigorous exercise program and physical therapy. (*Id.*). Plaintiff's October 22, 2002 cervical spine MRI showed "little change" when compared to his August 15, 2001 MRI. Plaintiff had normal lordotic curvature of the cervical spine with a central protrusion was observed at the C7-T1 level. (A.R. 194-95, 198-201). On December 11, 2002, Dr. Thoits wrote a letter to Dr. Schloff sharing the results of EMG testing, and reporting that plaintiff did not want to go forward with "Botox treatments for his medically refractory spasticity." (A.R. 196). The only examination Dr. Thoits appears to have conducted during the relevant time frame occurred on July 8, 2003. (A.R. 231-34). The ALJ's opinion addressed the results of that examination. (A.R. 15). The court finds no violation of the treating physician rule, and further finds that the ALJ's RFC determination is supported by substantial evidence.

B.    Past Relevant Work and Substantial Gainful Activity

The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because plaintiff was capable of performing his past relevant work. "Past relevant work" is defined as work the claimant has done within the past fifteen years that is "substantial gainful activity"[2] and

---

[2] "Substantial gainful activity is defined as work activity which involves doing significant physical and mental activities that are performed for pay or profit." *Cohen v. Secretary of Dept. of*

-10-

that lasted long enough for the claimant to learn to do it.   20 C.F.R. §§ 404.1560(b)(1),

416.960(b)(1).   A claimant who can still do his past relevant work is not disabled.   *Combs v.*

*Commissioner*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3)

("If we find that you have the residual functional capacity to do your past relevant work, we will

determine that you can still do your past work and are not disabled.").   It was plaintiff's burden at

Step 4 to prove that he was unable to perform (1) the functional demands and duties of a past

relevant job as plaintiff actually performed it, and (2) that he was unable to perform the functional

demands and job duties of his occupation as generally required by employers throughout the national

economy.   *See Garcia v. Secretary of Health & Human Servs.*, 46 F.3d 552, 556 (6th Cir. 1995); *see*

*also Delgado v. Commissioner*, 30 F. App'x 542, 548 (6th Cir. 2002) ("At the fourth step of the

sequential evaluation process, [the claimant] must prove that []he is unable to perform [his] past

relevant work and that []he is unable to return to h[is] former type of work as generally performed.").

It is clear that a claimant "must prove an inability to return to his former type of work and not just

to his former job."   *Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.

1987); *see also Butrum v. Chater*, No. 96-5910, 1997 WL 112411 (6th Cir. March 12, 1997) (same).

Social Security Ruling 82-61 states that a claimant will be found to be "not disabled" when it is

determined that he retains the RFC to perform:   (1) "[t]he actual functional demands and job duties

of a particular past relevant job;" or (2) "[t]he functional demands and job duties of the occupation

as generally required by employers throughout the national economy."   *Titles II and XVI: Past*

*Relevant Work -- The Particular Job or the Occupation as Generally Performed*, SSR 82-61 (SSA

_____

*Health and Human Services*, 964 F.2d 524, 533 (6th Cir. 1992); *see* 20 C.F.R. §§ 404.1572(a),
416.972(a).

-11-

1982) (reprinted in 1982 WL 31387, at * 2).  The two tests set forth in SSR 82-61 are clearly

disjunctive.  *See Delgado*, 30 F. App'x at 548; *see also Barnett v. Barnhart*, 362 F.3d 1020, 1023

n.3 (8th Cir. 2004); *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995).

        The VE's unrebutted testimony established that the wastewater treatment plant

operator job, as generally performed in the national economy, is performed at the light exertional

level.[3]  (A.R. 301).  The ALJ found that plaintiff was not disabled at Step 4 of the sequential

analysis, because plaintiff was capable of performing his past relevant work as a wastewater

treatment plant operator as the job is generally performed in the national economy.[4]  (A.R. 18).  The

Commissioner's decision in this regard is supported by substantial evidence.  Thus, the

Commissioner's decision denying plaintiff's applications for SSI and DIB benefits will be affirmed.

        Plaintiff's argument that the ALJ erred in treating plaintiff's wastewater treatment

plant operator work as "past relevant work" is meritless.  His argument conflates several distinct

concepts.  Social security regulations define "past relevant work" as "work that [the claimant] ha[s]

---

[3]VE testimony is not required at Step 4 of the sequential analysis.  *See Cruse v. Commissioner*, No. 06-5772, __ F.3d __, slip op. at 9 (6th Cir. Sept. 24, 2007)  It is common practice, however,  for an ALJ to rely upon a VE's testimony at Step 4.  *See, e.g.*, *Colvin v. Barnhart*, 475 F.3d 727, 731-32 (6th Cir. 2007).  The social security  regulations permit the ALJ to utilize testimony from a vocational expert at Step 4 to assist the ALJ in determining whether the claimant is capable of performing his past relevant work.  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see Hennes v. Commissioner*, 130 F. App'x 343, 346 (11th Cir. 2005) ("[A]lthough VE testimony is not required in determining whether a claimant can perform his past relevant work, *see Lucas v. Sullivan*, 918 F.2d 1567, 1573 n .2 (11th Cir.1990), the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'").

[4]The ALJ found held that plaintiff was unable to perform the wastewater treatment job as plaintiff performed it, because plaintiff had performed the job at the medium exertional level.

done within the past 15 years, and that was substantial gainful activity, and lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The ALJ was well aware of these requirements.  His opinion expressly states, "In addition [to the relevant 15 year period], the work must have lasted long enough for the claimant to do the job and meet the definition of substantial gainful activity."  (A.R. 17).  Plaintiff admits that he performed the wastewater treatment operator job within the last 15 years.  He testified that he performed the job from 1987 to 2001.  (A.R. 275; *see also* A.R. 70).  It is undisputed that plaintiff worked at this job long enough to learn it.  (Plf. Brief at 10).  Plaintiff does not contest that his former work as a wastewater treatment operator was "gainful activity."  His brief states, "We may presume the job was gainful, since it paid almost $17 per hour."  (Plf. Brief at 11).  Plaintiff's earnings records document gainful activity.  (A.R. 64-65).  Nonetheless, plaintiff's argues that he performed the wastewater treatment job under "special conditions," and that it was reversible error for the ALJ to have considered this work as "substantial gainful activity" and "past relevant work."  (Plf. Brief at 11-13).

Social security regulations define substantial gainful activity in  precise terms:

§ 404.1572 **What we mean by substantial gainful activity**
Substantial gainful activity is work activity that is both substantial and gainful:
(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not such a profit is realized.

20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities. The definition is clearly disjunctive.  *See Dolbashian v. Secretary of Health & Human Servs.*, 688 F.2d 4, 6 (1st Cir. 1982) (physically disabled man may

-13-

engage in substantial work activity by virtue of mental activities).  Plaintiff's testimony and his

statements to the Social Security Administration established that his past relevant work as a

wastewater treatment plant operator involved performing significant physical *and* mental activities.

(A.R. 71, 274-75, 299-300, 316).  Plaintiff described his wastewater treatment job in these terms:

> MONITOR COMPUTER TO MAKE SURE THAT THE PLANT WAS FILTERING
> PROPERLY AND I ALSO WALKED AROUND THE PLANT TO CHECK ON
> DIFFERENT THINGS TO MAKE SURE THEY WERE WORKING CORRECTLY.  I
> ALSO DID LIGHT MAINTENANCE ON THINGS SUCH [] AS CHANGE A MOTOR OR
> PUMP[.]

(A.R. 71).  The ALJ's finding that plaintiff's work as a wastewater treatment plant operator

constituted "substantial work activity" is supported by more than substantial evidence.

> Plaintiff argues that the Commissioner's decision should be overturned because the

ALJ failed to consider whether plaintiff's wastewater treatment work was performed under "special

conditions." The argument, in its entirety, is quoted verbatim below:

> 1.  Plaintiff was permitted to sit, stand and walk at will on the job.  Since these are essential
> prerequisites to Plaintiff being able to work at all (as treator Thoits opined: 204), these
> accommodations are the only reason plaintiff was able to perform the job (129, 300).  Work
> done under such special conditions" are not SGA:
>
>> Examples of special conditions that may relate to your impairment include, but are
>> not limited to situations in which...
>>     (2) You were allowed to...take frequent rest periods.
>> 20 C.F.R. § 404.1573(c).

 (Plf. Brief at 11).  Plaintiff cites no supporting case law.  His selective excerpt from 20 C.F.R. §

404.1573(c) is misleading.  The relevant regulation, with plaintiff's quoted passages shown in italics,

provides:

> (c) If your work is done under special conditions.  The work you are doing may be done
> under special conditions that take into account your impairment, such as work done in a
> sheltered workshop or as a patient in a hospital.  If your work is done under special
> conditions, we may find that it does not show that you have the ability to do substantial

-14-

gainful activity.  Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level.  *Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--*
(1) You required and received special assistance from other employees in performing your work;
(2) *You were allowed to work irregular hours or take frequent rest periods*;
(3) You were provided with special equipment or were assigned work especially suited to your impairment;
(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c); *see* 20 C.F.R. § 416.973(c).

Review of the entirety of the regulation, and not just one factor in isolation, demonstrates that plaintiff's position is insubstantial.  Plaintiff did not work as a hospital patient. He did not work in a sheltered workshop.  *See Dinkel v. Secretary of Health & Human Servs.*, 910 F.2d 315, 319 (6th Cir. 1990); *see also Grant v. Commissioner*, No. 95-3157, 1996 WL 403111, at * 3 (6th Cir. July 17, 1996) (Where the plaintiff alleged that his solicitor's job was not 'relevant' because it was performed in a sheltered workshop, the plaintiff had "the burden of proof to show that his past job should not be considered relevant.").  The record is devoid of evidence that plaintiff was permitted to work at a significantly below average productivity level.  There is no evidence reflecting a supervisor's or his employer's dissatisfaction with plaintiff's work.  *See Baldwin v. Heckler*, No. 84-3673, 1985 WL 13706, at * 3 (6th Cir. Sept. 24, 1985).  Plaintiff did not submit evidence that he was "prevented from doing ordinary or simple tasks satisfactorily without more supervision or

assistance than is usually given other people doing similar work." *Boyes v. Secretary of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see Hedgpeth v. Apfel*, No. 99-3433, 2000 WL 655019, at * 4 (7th Cir. May 18, 2000).  Plaintiff testified that he worked as a wastewater treatment operator  without direct supervision.  (A.R. 299-300; *see also* A.R. 316).[5]  The ALJ correctly applied the law.  Plaintiff's "special conditions" argument does not provide any basis for disturbing the Commissioner's decision.

The ALJ's factual determination that plaintiff's wastewater treatment operator job constituted "gainful work activity" is supported by more than substantial evidence.  "Gainful work" activity is determined on the basis of earnings.  *Martinez v. Commissioner*, 132 F. App'x 310, 313 (11th Cir. 2005).  Plaintiff worked 8 hours per day, 5.5 days per week, and was paid $16.92 per hour.  (A.R. 79).  The regulations specify that, "When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn."  20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2).  Plaintiff did not offer any evidence that his employer paid him in excess of the reasonable value of the work plaintiff had performed.  Plaintiff's earnings created a rebuttable presumption that his work was substantial gainful activity. *See Bell v. Commissioner*, 105 F.3d 244, 246 (6th Cir. 1996).  Plaintiff failed to rebut the presumption.

---

[5]Even if plaintiff had carried his burden of showing that his work was performed in a sheltered workshop, it would not have carried plaintiff past his earnings problem for substantial gainful activity purposes.  The regulations provide that, "If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid.  The fact that the sheltered workshop or similar facility is operating at a loss or is receiving some charitable contributions or governmental aid does not establish that you are not earning all you are being paid." 20 C.F.R. §§ 404.1574(a)(3), 416.974(a)(3).

In summary, the Commissioner properly applied the law, and his decision finding that plaintiff was not disabled at Step 4 of the sequential analysis is supported by more than substantial evidence.

  C. Statement of Error  I(B):  "the Job as it had to be Performed by Plaintiff no longer Exists in the Economy"

    Plaintiff's argument that "the Job as it had to be Performed by Plaintiff no longer Exists in the Economy," requires little discussion.  Plaintiff did not establish that wastewater treatment plant operator jobs "no longer exist[] in the economy."  The VE's testimony established that such jobs do exist.  The preface, the job "as it had to be performed by plaintiff," again ignores the disjunctive nature of the test, and is rejected for the reasons previously stated.

## 2.

    Plaintiff's second statement of error is that the ALJ committed reversible error because he "counted bench assembly as 'past relevant work'"[6] even though (A) plaintiff performed that work only as part of a larger job, and (B) "the treators' opinions that the work exceeded plaintiff's restrictions were opposed by only insubstantial evidence (the claim of a mere records reviewer)."  Issues raised in a perfunctory manner are deemed waived.  *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  The former argument (concerning work performed as part of a larger job) is not

---

  [6]Assuming *arguendo* that the ALJ erred in his analysis relating to plaintiff's bench assembly work, any error was harmless because the Commissioner's decision finding that plaintiff was not disabled because he was capable of performing the wastewater treatment plant operator job as generally performed in the national economy is supported by substantial evidence.

-17-

supported by any legal authority and is deemed waived for lack of development.   The latter argument was addressed in conjunction with the court's examination of the ALJ's RFC determination, and is rejected for the reasons stated.

## **<u>Conclusion</u>**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:   September 25, 2007          /s/  Joseph G. Scoville_____
                                     United States Magistrate Judge

-18-